FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 11, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JUSTIN T.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:17-CV-3146-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 19. Attorney D. James Tree represents Justin T. (Plaintiff); Special Assistant United States Attorney Diana Andsager represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On March 11, 2014, Plaintiff filed an application for Supplemental Security Income, alleging disability since October 28, 2006, due to ADHD, Bipolar Disorder, Oppositional Defiant Disorder, PTSD and right shoulder pain. Tr. 166, 184. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) S. Andrew Grace held a hearing on April 8, 2016, Tr. 36-63, and issued an unfavorable decision on May 2, 2016, Tr. 20-31.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

The Appeals Council denied review on June 27, 2017. Tr. 1-6. The ALJ's May 2016 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 28, 2017. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on September 17, 1988, and was 18 years old on the alleged onset date, October 28, 2006. Tr. 166. He completed high school in 2006. Tr. 40, 185. Plaintiff's disability report indicates he stopped working on October 28, 2010, because of his condition(s). Tr. 185. He last worked as a cook at McDonald's in 2010; the job ended after he had a conflict with the store manager. Tr. 41, 52-53. However, he testified he also performed grounds keeping work for a short period of time in 2014. Tr. 43. Plaintiff stated the main thing preventing him from being able to work was his manic depressive bipolar disorder that caused him to get physical with or yell at employers or customers. Tr. 44.

With respect to his mental health, Plaintiff testified his current treatment plan called for medication and weekly counseling sessions, but he indicated he stopped going to counseling because he believed his counselor would share information with his mother. Tr. 44-46. He had been off of mental health medications and had not attended counseling since April of 2015. Tr. 46. As to his physical health, Plaintiff indicated he had "a silver dollar sized dead zone" in his right shoulder which was painful when he was overly active. Tr. 50.

Plaintiff reported he spends his days taking long walks and visiting with friends. Tr. 48-49. He stated he has friends that come over almost daily to play video games, and he estimated he used marijuana with these friends every other day. Tr. 49-50. He admitted medical providers had informed him that marijuana

use might be interfering with his condition and treatment, but reported he stopped using for a three-month period of time without any noticeable difference. Tr. 50-51.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through

four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 2, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the disability application date, March 11, 2014. Tr. 22. At step two, the ALJ determined Plaintiff had the following severe impairments: attention-deficit hyperactivity disorder, bipolar disorder, learning disorder, right trapezius muscle strain, and obesity. Tr. 22. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work with the following limitations: he could frequently push and pull with his dominant right upper extremity; he could occasionally climb ladders, ropes, and scaffolds and crawl; he could frequently reach with his dominant right upper extremity; he must avoid concentrated exposure to hazards in the workplace; he was limited to simple, repetitive, routine tasks consistent with unskilled work; he was limited to low-stress work, defined as work requiring few decisions and changes; he could have

no contact with the general public; he was limited to occasional superficial contact with coworkers; and he could have occasional contact with supervisors. Tr. 25.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 30. At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of small products assembler, garment sorter and laundry folder. Tr. 30-31. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 11, 2014, the disability application date, through the date of the ALJ's decision, May 2, 2016. Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) improperly weighing the opinion testimony; and (2) discrediting Plaintiff without specific, clear and convincing reasons to do so. ECF No. 14 at 3.

## DISCUSSION

**A.    Plaintiff's Symptom Testimony**

Plaintiff challenges the ALJ's finding that Plaintiff was not entirely credible, Tr. 26. ECF No. 14 at 16-20.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must

identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 26.

The ALJ first indicated the alleged severity of Plaintiff's workplace limitations was not supported by the objective medical record as a whole. Tr. 26.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

As fully discussed in Section C, below, the medical evidence of record does not support Plaintiff's allegation of disabling physical and mental limitations. *See infra*. Consequently, the Court finds the ALJ correctly determined that Plaintiff's subjective complaints were not consistent with the medical evidence of record.

The ALJ next stated that Plaintiff's activities of daily living did not support the level of subjective complaints by Plaintiff. Tr. 26.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was

proper for the ALJ to find Plaintiff's reports of activities such as mowing lawns, doing household chores, performing odd jobs, socializing with friends on a nearly daily basis, and getting up every day at 8:30 a.m. and going to look for work were inconsistent with his alleged limitations and thus detracted from his overall credibility. Tr. 23-24, 27, 49, 192-193, 264.

The ALJ also noted Plaintiff indicated to his treatment providers that he was working odd jobs until at least April 9, 2013. Tr. 26.

Social Security regulations provide that employment during any period of claimed disability may be probative of a claimant's ability to work. 20 C.F.R. §§ 404.1571, 416.971. Moreover, the ability to perform even part-time work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted the claimant's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment).

The record reflects Plaintiff continued to work odd jobs to support himself after the alleged onset date. Tr. 23, 264. For example, Plaintiff reported to the Family Practice Clinic on April 9, 2013, that he had continued to work jobs, mostly in lawn maintenance, but only worked enough to pay the bills. Tr. 26, 262. The ALJ properly discounted Plaintiff's credibility on the basis that he continued to perform work during the period of time he claimed disability.

The ALJ additionally noted Plaintiff's mental health symptoms improved when he was participating in mental health treatment and taking his medications. Tr. 27.

The effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d

439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

Plaintiff's mental health treatment records indicate Plaintiff's symptoms improved when he was participating in mental health treatment and taking his medications. Tr. 27, 349-350. The evidenced improvement of Plaintiff's mental health symptoms was an additional proper basis to discount his subjective complaints.

With regard to Plaintiff's mental health condition, the ALJ also stated that Plaintiff continued to use marijuana despite being informed by his treatment providers that his continued use of marijuana could be detrimental to his mental health. Tr. 27, 347. Furthermore, Plaintiff discontinued his mental health treatment during the relevant time period and made little effort to seek additional treatment for his allegedly disabling mental health symptoms. Tr. 27.

In assessing a claimant's credibility, an ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)); *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." S.S.R. 16-3p. Moreover, an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, Plaintiff's reason for failing to follow treatment advice (discontinue marijuana use) was that he stopped using for a three-month period of time but did

not notice a difference. Tr. 50-51. Plaintiff's self-report in this regard does not change the fact that medical providers had informed him that marijuana use might be interfering with his condition and treatment. Tr. 347. Plaintiff's explanation for discontinuing mental health treatment altogether was that he could not trust that his counseling sessions would be kept private from his mother, who worked at the same facility. Tr. 45. However, that rationalization provides no support for Plaintiff not making a greater effort to find a new mental health provider at a different location in the months that followed. The ALJ cited Plaintiff's failure to follow medical advice and lack of effort to secure a new treatment provider in support of his opinion that Plaintiff's condition was not as limiting as alleged.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**B.     Lay Witness Testimony**

Plaintiff contends the ALJ erred by not properly evaluating the function report completed by Plaintiff's mother, Sunday Sutton, on May 16, 2014, Tr. 215-222. ECF No. 14 at 16.

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ may not ignore or improperly reject the

probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ assigned "some weight" to the third party function report completed by Ms. Sutton, but held that Ms. Sutton's statements were not entirely supported by the medical records and, in any event, the issues Ms. Sutton identified were addressed in the ALJ's RFC determination. Tr. 29, 215-222. The Court agrees.

First, while Ms. Sutton noted that Plaintiff had behavioral issues and was "oppositional," Tr. 215-222, the ALJ accounted for these noted characteristics by limiting Plaintiff to simple, repetitive, routine, low-stress work with no contact with the general public, occasional superficial contact with coworkers, and only occasional contact with supervisors, Tr. 25. Furthermore, Ms. Sutton specifically indicated she was "not sure" about her answers to many of the questions listed in the report since she did not live with Plaintiff. Tr. 215-222. Finally, as indicated by the ALJ, the objective medical evidence of record does not entirely support Ms. Sutton's accounts of significant limitations. *See infra*.

The Court finds the ALJ provided germane reasons for discounting Ms. Sutton's lay witness statements in the third party function report.

### C. Medical Opinion Testimony

Plaintiff asserts the ALJ erred by failing to properly assess multiple medical source opinions of record. ECF No. 14 at 3-15.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, the ALJ is required to set forth the reasoning behind its decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Evidence from "other sources" is any information or statements from a non-medical source about any issue in Plaintiff's claim. 20 C.F.R. § 404.1513(a)(4). The ALJ is required to consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to provide germane reasons for discounting "other source" statements.

The ALJ thoroughly reviewed the medical and other evidence in the file, analyzed the testimony, and determined Plaintiff had the RFC to perform light exertion level work with the following limitations: he could frequently reach, push and pull with his dominant right upper extremity; he could occasionally climb ladders, ropes, and scaffolds and crawl; he must avoid concentrated exposure to hazards in the workplace; he was limited to simple, repetitive, routine tasks consistent with unskilled work; he was limited to low-stress work; he could have no contact with the general public; he was limited to occasional superficial contact

with coworkers; and he could have occasional contact with supervisors. Tr. 25. The Court finds the credible evidence of record supports the ALJ's RFC determination. *See infra*.

1. **Tae-Im Moon, Ph.D.**

On May 6, 2013, and April 15, 2014, Dr. Moon completed Mental Source Statement forms. Tr. 263-272. On May 6, 2013, Dr. Moon checked boxes indicating that all basic work activities were only mildly to moderately limited. Tr. 265. However, on April 15, 2014, Dr. Moon opined that Plaintiff had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting. Tr. 270-271. Dr. Moon found that Plaintiff had mild to moderate limitations in the remainder of his workplace abilities. *Id*.

The ALJ accorded the April 2014 form report noting marked limitations "limited weight." Tr. 27. The ALJ indicated the marked limitation findings were not supported by the objective medical evidence of record which showed only routine complaints and conservative care and appeared to be entirely based on Plaintiff's self-reported symptoms. Tr. 27-28. The ALJ further noted that the assessed marked limitations were inconsistent with record evidence which showed improvement with treatment. Tr. 28.

The evidence of record reflects Plaintiff generally had only mild to moderate limitations in his workplace abilities and his symptoms improved when he was participating in mental health treatment and taking his medications. Tr. 27-29, 265, 300, 349-350, 361-362. As Plaintiff reported during Dr. Moon's April 2014 examination, although he was diagnosed at age 6 or 7 with bipolar disorder, oppositional defiant disorder, PTSD and ADHD and treated with counseling, Risperdal and antidepressants, Plaintiff nevertheless ceased taking all medications by age 16, Tr. 402, and, as stated previously, discontinued counseling as of April

of 2015, Tr. 46. Plaintiff's failure to continue mental health treatment, which appears to have improved his reported symptoms, suggests his condition was not as limiting as alleged by Plaintiff or opined by Dr. Moon.

Dr. Moon's April 2014 Mental Source Statement also noted Plaintiff "reported" anger problems and that his mood was labile during the day, yet his mood during the interview was described as "up and good." Tr. 402. Furthermore, objective findings in the April 2014 report indicate Plaintiff's affect was appropriate, his mood calm and his attitude and behavior were good, cooperative and unremarkable. Tr. 405. Given these discrepancies, it was reasonable for the ALJ to conclude the assessed marked limitations were based on Plaintiff's subjective complaints.[1]

The Court finds substantial evidence supports the ALJ's determination to accord limited weight to the marked mental health limitations assessed in Dr. Moon's April 2014 Mental Source Statement.

**2.  Jeff Teal, Ph.D.**

Dr. Teal performed a psychological/psychiatric examination of Plaintiff on December 28, 2010. Tr. 359-367. Dr. Teal checked boxes indicating Plaintiff had only mild to moderate functional limitations. Tr. 361. The ALJ assigned significant weight to Dr. Teal's report, finding it was supported by the objective medical evidence of record. Tr. 28.

Consistent with the ALJ' RFC determination, the findings of Dr. Teal reflect that Plaintiff was capable of performing simple, repetitive, routine, unskilled, low-

---

[1]As discussed in Section A, above, the ALJ's reasons for discounting plaintiff's subjective complaints in this case are supported by the evidence of record and free of error. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

stress work with no contact with the general public, occasional superficial contact with coworkers and occasional contact with supervisors. Tr. 25, 361.

Plaintiff contends Dr. Teal's objective findings which noted some moderate and severe impacts, Tr. 364-367, "compel disability." ECF No. 14 at 10-11. However, Dr. Teal translated these "objective findings" into the mild to moderate functional limitations noted at Tr. 361, and these functional limitations are reflected in the ALJ's ultimate RFC determination. In any event, an ALJ may properly rely upon selected portions of a medical opinion while disregarding other parts. *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The Court finds that the ALJ did not err by crediting Dr. Teal's opinion that Plaintiff had no greater than moderate work related functional limitations.

### 3. Therapist Arland Pomerinke

Therapist Pomerinke, an "other source," filled out a "Mental Source Statement" form on January 23, 2015. Tr. 304-306. Therapist Pomerinke checked boxes indicating Plaintiff had a few marked mental limitations, would be off task over 30 percent of the workday and would miss two workdays per month. *Id*.

The ALJ accorded limited weight to Therapist Pomerinke's opinions. Tr. 27. The ALJ indicated the record reflects Plaintiff's condition improved when he was engaged in treatment and taking his medications, Plaintiff was not engaged in treatment and made little effort to seek treatment, and Mr. Pomerinke's check-box form provided little supporting explanation. Tr. 27.

As discussed above, substantial record evidence demonstrates Plaintiff's symptoms improved when he was participating in mental health treatment and taking his medications, Tr. 27-29, 265, 300, 349-350, 361-362, yet Plaintiff ceased taking all medications by age 16, Tr. 402, and, discontinued counseling as of April

of 2015, Tr. 46.  The record also reflects Plaintiff was not engaged in mental health treatment at the time of the administrative hearing and has made little effort to seek additional treatment for his allegedly disabling mental health symptoms. Furthermore, it is permissible for an ALJ to reject a check-box report that does not explain the bases for the medical professional's conclusions.  *Crane*, 76 F.3d at 253; *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").  Here, Mr. Pomerinke's mental source statement provides no explanation in support of the limitations assessed on the check-box form.

The Court finds the ALJ provided germane reasons for discounting Therapist Pomerinke's report.

### 4. Rebecca Nelson, ARNP

Nurse Nelson, an "other source," examined Plaintiff in 2010 and 2013 and opined that Plaintiff could perform light to medium exertion level work but had mild limitations in standing, walking and sitting.  Tr. 257-259, 369-370.  In 2010, Nurse Nelson indicated the physical examination was "pretty normal except for limited flexion and extension of his back with bilateral paraspinal muscle tenderness in the upper lumbar area only," Tr. 377, and opined that Plaintiff was limited to standing two hours before needing a 15-minute break and could sit for an hour and a half before needing to change positions, Tr. 369.  At the April 2013 evaluation, Nurse Nelson noted Plaintiff reported the low back pain he complained of in 2010 had resolved with increased walking as exercise.  Tr. 262.

The ALJ accorded significant weight to Nurse Nelson's opinions.  Tr. 28. The ALJ indicated Nurse Nelson's opinions were consistent with the objective medical records as a whole; specifically finding the physical examinations and imaging revealed only mild inferior glenoid spurring in the right shoulder but were otherwise essentially normal.  Tr. 28, 273.

1    Plaintiff argues the ALJ appropriately accorded weight to Nurse Nelson's
2 opinions, but failed to adequately incorporate all of Nurse Nelson's findings into
3 the RFC determination. ECF No. 14 at 15.
4    Plaintiff asserts the RFC determination contains no allowance for Nurse
5 Nelson's assessment of Plaintiff's need for 15-minute breaks every two hours.
6 ECF No. 14 at 15. No such allowance was necessary. As indicated by Defendant,
7 since normal breaks occur every two hours, S.S.R. 96-9p, two 15-minute breaks
8 combined with a normal lunch period would still be consistent with light exertion-
9 level work. ECF No. 19 at 15. Moreover, this limitation was assessed in
10 December 2010, nearly four years prior to the application date, and, at the April
11 2013 evaluation, Nurse Nelson stated that Plaintiff reported the low back pain he
12 complained of in 2010 had resolved. Tr. 262.
13    Plaintiff also contends that Nurse Nelson's April 2013 assessment of
14 "moderate" limitations in handling, Tr. 258, was inconsistent with the RFC
15 determination. ECF No. 14 at 15. While Nurse Nelson opined that Plaintiff's
16 diagnosed shoulder pain moderately affected Plaintiff's ability to handle, she did
17 not describe or provide any basis for this limitation.[2] Nevertheless, the written
18 portion of Nurse Nelson's report mentions Plaintiff worked mowing a lawn on

---

[2]The Court notes that acceptable medical source Natalia Luera, M.D., completed a physical functional evaluation on April 10, 2014, and concluded Plaintiff could perform medium exertional level work with no handling limitations. Tr. 292-294. In addition, state agency reviewing physician Wayne Hurley, M.D., concluded on September 29, 2014, that Plaintiff could perform light exertion level work with some right upper extremity limitations, but no handling restrictions. Tr. 86-88. The opinions of Drs. Luera and Hurley were accorded significant weight by the ALJ, Tr. 28-29, and Plaintiff has not contested these findings, *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

April 3, 2013, and indicated this activity did not increase his shoulder pain, nor did lawn maintenance generally make his symptoms worse. Tr. 262. Nurse Nelson ultimately determined Plaintiff could perform light exertion level work which was defined on the form as the ability to lift 20 pounds maximum and frequently lift or carry up to 10 pounds, to walk or stand six out of eight hours per day, and "to sit **and use pushing or pulling arm or leg movements most of the day**." Tr. 259 (emphasis added).

The Court finds that Nurse Nelson's opinions do not contradict the ALJ's RFC determination in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED July 11, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE